1  Laura Fleming, Bar No. 219287
   lf@paynefears.com
2  Matthew C. Lewis, Bar No. 274758
   mcl@paynefears.com
3  Jack M. McMenamin, Bar No. 348478
   jmm@paynefears.com
4  PAYNE & FEARS LLP
   Attorneys at Law
5  4 Park Plaza, Suite 1100
   Irvine, California 92614
6  Telephone: (949) 851-1100
   Facsimile: (949) 851-1212
7
   Attorneys for Defendant ABM
8  INDUSTRY GROUPS, LLC

9

10              **UNITED STATES DISTRICT COURT**

11              **NORTHERN DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| MARIA DE LOS ANGELES ACEVEDO, an individual and on behalf of all others similarly situated, | Case No. 3:25-cv-7370 |
| Plaintiff, | [Removed from Santa Clara Superior Court, Case No. 25CV471141] |
| v. | **PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332 AND 1441** |
| ABM INDUSTRY GROUPS, LLC., a Delaware limited liability company; FORTINET, INC., a Delaware stock corporation; ADRIANA SOLORIO, an individual; and DOES 1 through 100, inclusive, | |
| Defendants. | |

21

22      **TO THE UNITED STATES DISTRICT COURT FOR THE**

23  **NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND TO**

24  **HER COUNSEL OF RECORD:**

25          **PLEASE TAKE NOTICE** that Defendant ABM Industry Groups, LLC.

26  ("Defendant" or "ABM") hereby removes this action from the Superior Court of the

27  State of California for the County of Santa Clara to the United States District Court

28  for the Northern District of California, on the following grounds:

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

**PAYNE & FEARS LLP**
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

# I.     PROCEDURAL BACKGROUND-THE STATE COURT ACTION

1.     On or about July 22, 2025, Plaintiff Maria de Los Angeles Acevedo ("Plaintiff") filed an action against ABM titled *Maria De Los Angeles Acevedo v. ABM Industry Groups, LLC et al.,* in the Superior Court of the State of California, County of Santa Clara Case No. 25CV471141 (the "State Court Action").  True and correct copies of the Complaint served on ABM are attached hereto as **Exhibit "A"** as part of the Index of Exhibits**.**  (*See* Declaration of Matthew C. Lewis ["Lewis Decl."], ¶ 2, Ex. A.)

2.     A true and correct copy of the Summons filed by Plaintiff in the State Court Action on July 22, 2025, is attached hereto as **Exhibit "B"** as part of the Index of Exhibits.  (*See* Lewis Decl., ¶ 3, Ex. B.)

3.     A true and correct copy of the Civil Case Cover Sheet filed by Plaintiff in the State Court Action on July 22, 2025, is attached hereto as **Exhibit "C"** as part of the Index of Exhibits.  (*See* Lewis Decl., ¶ 4, Ex. C.)

4.     A true and correct copy of the Alternative Dispute Resolution Packet in the State Court Action issued by the Santa Clara County Superior Court, is attached hereto as **Exhibit "D"** as part of the Index of Exhibits.  (*See* Lewis Decl., ¶ 5, Ex. D.)

5.     A true and correct copy of the Order Deeming Case Complex and Staying Discovery and Responsive Pleading Deadline in the State Court Action issued by the Santa Clara County Superior Court on July 31, 2025, is attached hereto as **Exhibit "E"** as part of the index of exhibits.  (*See* Lewis Decl., ¶ 6, Ex. E.)

6.     The Complaint in the State Court Action was served on Defendant ABM Industry Groups, LLC, through its California registered agent for service of process on August 1, 2025. (*See* Lewis Decl., ¶ 67.)

7.     Exhibits "A" through "E" attached hereto as part of the Index of Exhibits constitute the pleadings, process, and orders, if any, filed and served upon or by Plaintiff or Defendant in the State Court Action at the time of removal.  (*See*

Lewis Decl., ¶ 8.)

8.    Plaintiff alleges the following causes of action against Defendant on behalf of herself and the putative class: (1) Failure to Pay Overtime Wages; (2) Failure to Pay Minimum Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (5) Failure to Pay All Wages Due Upon Termination; (6) Failure to Provide Accurate Wage Statements; (7) Failure to Timely Pay Wages During Employment; (8) Violation of Labor Code § 2802; (9) Violation of Labor Code § 227.3; and (10) Unfair Competition.

## II.    REMOVAL IS TIMELY

9.    Pursuant to 28 U.S.C. section 1446(b)(1), this case is being removed within 30 days of the time when Defendant first became aware that it was removable. *See* 28 U.S.C. § 1446(b)(1).

10.    28 U.S.C. section 1446(b)(1) provides that, "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]"

11.    "[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings[.]" *Harris v. Bankers Life & Cas. Co*., 425 F.3d 689, 694 (9th Cir. 2005).  Here, the operative Class Action Complaint in the State Court Action was served on August 1, 2025. (Exhibit "F" [Proof of Service of Summons].)  This Notice of Removal is filed within 30 days of that date and is therefore timely under 28 U.S.C. section 1446(b)(1).

## III.    PLAINTIFF'S COMPLAINT IS SUBJECT TO REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT OF 2005 ("CAFA")

12.    This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005.  As such, this action may be removed to this Court by Defendant pursuant to 28 U.S.C. sections 1441, 1446, and 1453.

13.    Under CAFA, the federal district court has jurisdiction if:

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

-3-

a. any class member (named or not) is a citizen of a different state than any defendant; and

b. The combined claims of all class members exceed $5 million exclusive of interest and costs; and

c. There are at least 100 class members in all proposed plaintiff classes. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), and 1453(a).

14. Generally, courts "strictly construe[]" removal statutes, rejecting removal jurisdiction in favor of remand to the state court if any doubts as to the right of removal exist. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012). But "CAFA 'significantly expanded federal jurisdiction in diversity class actions.'" *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 398 (9th Cir. 2010)); *see also Garcia v. Acushnet Co.*, No. 3:21-CV-01581-BEN-BGS, 2022 WL 1284820, at *3 (S.D. Cal. Apr. 29, 2022). As such, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Salatino v. Am. Airlines, Inc.*, 719 F. Supp. 3d 1094, 1098 (S.D. Cal. 2024).

15. Defendant denies any liability in this case, both as to Plaintiff's individual claims and as to the class or representative claims. Defendant will present compelling defenses to these claims on the merits and intends to oppose class certification. Defendant believes that class treatment is inappropriate under these circumstances and that there are many material differences between the named Plaintiff and the employees Plaintiff seeks to represent in her Complaint. Finally, Defendant contends that Plaintiff is subject to a written arbitration agreement and collective bargaining agreement that contain legally enforceable class waiver provisions.

16. Defendant expressly reserves all rights in these regards. However, for purposes of the jurisdictional requirements for CAFA removal only, Defendant

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

notes that, as set forth in detail below, Defendant is authorized to remove this action to this Court pursuant to CAFA because Plaintiff has filed a class action complaint where Defendant is a citizen of states different from Plaintiff, the alleged amount in controversy exceeds $5 million in the aggregate, and the classes established by Plaintiff's Complaint contain well over 100 class members.  *See* 28 U.S.C. § 1332(d)(5)(B) and (d)(6).

> A. **The Diversity of Citizenship Requirement is Satisfied Under CAFA Between Plaintiff and Defendant.**

17.    This Court has original jurisdiction pursuant to 28 U.S.C. section 1332(d) if, among the other requirements of section 1332(d), a member of a class is a citizen of a state different from any defendant.  *See* 28 U.S.C. § 1332(d)(2)(A). Since Plaintiff in this case is a citizen of California, and Defendant is a citizen of Delaware and New York, minimal diversity exists between Plaintiff and Defendant, and there is jurisdiction under CAFA.

> 1.    **Plaintiff is a Citizen of the State of California.**

18.    To establish citizenship of a natural person for diversity purposes, the party must be both a citizen of the United States and a domiciliary of one particular state.  *Kantor v. Wellesley Galleries, Ltd*., 704 F.2d 1088, 1090 (9th Cir. 1983).  A person's "domicile" is the place where he resides, with the intent to remain or to return.  *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001) (citing *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986)).  Domiciliary is determined at the time the lawsuit was filed.  *Strotek Corp. v. Air Transp. Ass'n of Am*., 300 F.3d 1129, 1131 (9th Cir. 2002).

19.    "While residency is distinct from domicile, the Supreme Court and numerous other courts have treated a person's residence as prima facie evidence of his domicile."  *Mpock v. FCA US LLC*, No. 1:21-CV-00330-NONE-SAB, 2021 WL 5356472, at *5 (E.D. Cal. Nov. 17, 2021), rep. and recommendation adopted, No. 1:21-CV-00330-NONE-SAB, 2021 WL 5966833 (E.D. Cal. Dec. 16, 2021); *see*

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

*also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("Residence alone is not the equivalent of citizenship, but the place of residence is prima facie the domicile."). It is presumed that a natural person's residence is also her domicile, and a party resisting this presumption bears the burden of producing contrary evidence. *State Farm Mut. Auto. Ins. Co*., 19 F.3d at 519; Lew, 797 F.2d at 751.

20. Here, Plaintiff's Complaint alleges that Plaintiff "is a resident of California." (Compl., ¶ 2.) She further alleges that the class includes "…all other current and former non-exempt California employees employed by or formerly employed by Defendants…" (*Id.*, ¶ 1.) Accordingly, Plaintiff is, and at all times since the commencement of the action has been, a resident and citizen of California.

## 2.    Defendant ABM Industry Groups, LLC Is a Citizen of Delaware and New York.

21. A corporation is a citizen of both its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). A limited liability corporation is "a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

22. Defendant is now and was at the time this action was filed a single-member limited liability company. (*See* Declaration of Allison Nelson ("Nelson Decl.") at ¶ 4.) The sole member/owner of Defendant is ABM Industries, Inc. ("ABM Industries"). (*Id.* at ¶ 3.)

23. ABM Industries is now and was at the time this action was filed a citizen of the States of Delaware and New York within the meaning of 28 U.S.C. § 1332. (*Id.*) ABM Industries is incorporated in Delaware and has its principal place of business in New York. (*Id.*)

24. Plaintiff was a citizen of California, and was not a citizen of Delaware or New York when she filed the State Court Action or when this Petition and Notice

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

was filed. Accordingly, minimal diversity exists between one Plaintiff (California) and one Defendant (Delaware and New York).

**B.    <u>There Are More Than 100 Members in the Proposed Class.</u>**

25.    This Court has original jurisdiction pursuant to 28 U.S.C. section 1332(d) if, among the other requirements of Section 1332(d), the action involves a putative class of at least 100 persons.  *See* 28 U.S.C. § 1332(d)(5)(B).

26.    Plaintiff defines the "Class Members" as all current and former hourly non-exempt employees of all Defendants in California.  (Compl., ¶ 1.)  Each cause of action alleges a different start date for violations.  Different causes of action start from different dates.

27.    Plaintiff's 1st, 2nd, 3rd, 4th, 9th, and 10th causes of action allege violations from 4 years prior to the filing of the Complaint in this Action through the present, placing the potential Class Members for those causes of action starting on July 22, 2021.  (Compl., ¶¶ 42, 48, 55, 63, 70, 93, 100, 104.)  Plaintiff's 5th and 8th causes of action allege violations from 3 years prior to the filing of the Complaint in this Action through the present, placing the potential Class Members for those causes of action starting on July 22, 2022.  (Compl., ¶¶ 70, 93.)    Plaintiff's 6th and 7th causes of action allege violations from 1 year prior to the filing of the Complaint in this Action through the present, meaning that the Class Members for those causes of action start from July 22, 2024.  (Compl., ¶¶ 78, 87.)

28.    From July 22, 2021 – October 31, 2024, Defendant employed approximately 31,238 hourly, non-exempt employees in California.  (Declaration of Richard Robinson ("Robinson Decl."), ¶ 4).  From November 1, 2024 – August 13, 2025, Defendant hired an additional 3,606 employees.  Declaration of Sterling Scruggs ("Scruggs Decl."), ¶¶ 4.  In total in the class period, Defendant employed 34,844 non-exempt employees in California.  Should Plaintiff's proposed class be certified (which Defendant opposes), it would consist of far more than 100 members.  Thus, there is minimal jurisdiction under CAFA.  *See* 28 U.S.C. §

PAYNE & FEARS LLP

ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

1    1332(d)(5)(B).

2    **C.    <u>The Requisite Amount in Controversy Exceeds $5 Million.</u>**

3    29.    Although, again, Defendant denies that Plaintiff's claims have any

4    merit, Defendant avers, for purposes of meeting the jurisdictional requirements for

5    removal only, if Plaintiff were to prevail on every claim and allegation in her

6    Complaint on behalf of the putative class, the requested monetary recovery would

7    exceed $5 million.

8    30.    The amount in controversy considers the amount in dispute, not the

9    amount a plaintiff is likely to recover.  *Lewis*, 627 F.3d at 400.  "[T]he amount in

10    controversy reflects the *maximum* recovery the plaintiff could reasonably recover."

11    *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (emphasis in

12    original) (quoting *Lewis*, 627 F.3d at 401).  Thus, in determining the maximum

13    recover that a plaintiff could reasonably recover, a defendant is "not required to

14    'review extensive employee records . . . to ascertain the exact violation rate for the

15    purposes of removal.'"  *Diaz v. Ardagh Metal Beverage USA, Inc.*, No. 2:22-CV-

16    00100-TLN-KJN, 2022 WL 3368537, at *5 (E.D. Cal. Aug. 15, 2022) (emphasis

17    added) (quoting *Heatley v. Lin Rogers Elec. Contractors, Inc.*, No. SACV 8:22-

18    00042-CJC (KESx), 2022 WL 715156, at *3 (C.D. Cal. Mar. 10, 2022); citing

19    *Ritenour v. Carrington Mortg. Servs*. LLC, 228 F. Supp. 3d 1025, 1031 (C.D. Cal.

20    2017)).

21    31.    Nor is a defendant required to "prove it actually violated the law at the

22    assumed rate."  *Arias*, 936 F.3d at 927.  "CAFA's [amount-in-controversy]

23    requirements are to be tested by consideration of real evidence and the reality of

24    what is at stake in the litigation, using reasonable assumptions underlying the

25    defendant's theory of damages exposure."  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d

26    1193, 1198 (9th Cir. 2015); *Perez v. Rose Hills Co*., 131 F.4th 804, 808 (9th Cir.

27    2025); *see also Ballungay v. Ricoh USA, Inc*., No. 2:24-10785-JLS-AGR, 2025 WL

28    907546, at *5-6 (C.D. Cal. March 24, 2025); *Gant v. Aldi*, No. LA CV19-03109

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

JAK (PLAx), 2020 WL 1329909, at *2 (C.D. Cal. Mar. 20, 2020) (finding that a defendant may proffer evidence that establishes the number of employees who met the class description, their average rate of pay, and the number of qualifying workweeks, and that the defendant may then estimate the amount in controversy by making reasonable assumptions about potential violation rates based on allegations in the complaint).

### 1.    Plaintiff's First Claim for Failure to Pay Overtime Wages Places Almost $18 Million in Controversy.

32.    Plaintiff's first cause of action alleges that Defendant failed to pay Plaintiff and the Class members all overtime wages owed.  (Compl., ¶¶ 38-44.) Specifically, Plaintiff alleges "Plaintiff and Class Members, at times, worked for Defendants during shifts that consisted of more than eight (8) hours in a workday and/or more than forty hours in a workweek, and/or seven (7) consecutive workdays in a workweek, without being paid overtime wages for all hours worked…" (Compl., ¶ 42.)  These violations happened because employees had to work of the clock when Defendant required employees to come early and leave late for work without clocking in and out, to have to work prior to clocking in, to have to work during meal periods, to clock out during rest periods, to attend meetings off the clock, to drive off the clock, to make calls off the clock, to go through security off the clock.  (Id.)  Defendant also failed to include all pay in overtime, including bonuses, incentive pay, meal allowances, mask allowances, and gift cards.  (Id.) Defendant also allegedly detrimentally rounded employee time entries and did not implement an alternative workweek schedule that is compliant with Labor Code section 511 and applicable Wage Orders.  (Id.)

33.    Plaintiff's allegations are detailed and allege a series of policies and practices on the part of Defendant failing to pay overtime wages.  Because Plaintiff has alleged systematic policies and practices on the part of Defendant to fail to pay overtime wages, for purposes of this jurisdictional analysis, the Court should, at

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

minimum, assume one hour of unpaid overtime wages, per employee, during each workweek (i.e., a 20% violation rate). *See, e.g., McCollum v. TGI Friday's, Inc*., No. SACV 22-00392-FWS-JDE, 2022 WL 2663870, at *4 (C.D. Cal. July 11, 2022) (observing where plaintiff alleged "systematic pattern of wage and hour violations" assumptions of one violation per claim per pay period was reasonable); *Soto*, 2018 WL 1224425, at *3 (finding it reasonable to assume one hour of unpaid wages per employee per workweek where plaintiff alleged that defendant failed to pay her and the class members for all hours worked on a "consistent" and "regular" basis); *Reyes v. Carehouse Healthcare Ctr*., LLC, No. SACV 16–01159–CJC(MRWx), 2017 WL 2869499, at *3 (C.D. Cal. July 5, 2017) (defendant's estimate of one hour of unpaid overtime wages per workweek was reasonable where plaintiff alleged that defendants engaged in a "regular practice of willfully, unfairly and unlawfully" depriving plaintiff and the class members of compensation); *Ray v. Wells Fargo Bank, N.A*., No. CV 11–01477 AHM (JCx), 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011) (finding defendant's estimated one hour per week per class member conservative and reasonable when plaintiff alleged that he and putative class members "routinely" worked more than eight hours a day and/or forty hours per week).

34.    From July 22, 2021 – October 31, 2024, Defendant employed approximately 31,238 hourly, non-exempt employees in California. (Robinson Decl., ¶ 4.) During that time period, approximately 911,580 paychecks were issued to those employees. (Robinson Decl., ¶ 4.) From November 1, 2024 – August 13, 2025, Defendant hired an additional 3,606 employees. (Scruggs Decl., ¶ 4.) During that time period, approximately 359,993 paychecks were issued to hourly, non-exempt employees in California. (Scruggs Decl., ¶ 6.) In total in the class period, Defendant employed 34,844 non-exempt employees in California. Assuming that each paycheck represents at least one workweek, Class Members who allegedly suffered overtime violations worked at least 1,271,573 workweeks during the class

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

-10-

period.  Just to be conservative, Defendant will subtract 12 weeks of vacation / sick time per alleged Class Member, even though many alleged Class Members did not work the full, 4-year statutory period.  This leaves 853,445 workweeks (1,271,573 – (12 x 34,844)).

35.    For large employers like Defendant, with 26 or more employees, the California minimum wage rate was $14.00 per hour in 2021.   That is the rate that Defendant uses in these calculations for the entire class period, despite the California minimum wage increasing each year since then.

36.    By multiplying the lowest possible minimum wage rate during the class period ($14), by the overtime multiplier of 1.5, we get an overtime hourly rate of $21.  By multiplying the lowest hourly minimum wage rate applicable during the class period, by the minimum total number of weeks worked by the putative class during the class, we get a total amount in controversy for Plaintiff's first claim of **$17,922,345**.  (1,271,573 x $21 = 17,922,345).

## 2.    Plaintiff's Second Claim for Failure to Pay Minimum Wage Places Almost $12 Million in Controversy.

37.    Plaintiff's second cause of action alleges that Defendant failed to pay Plaintiff and the Minimum Wage Class all wages owed at the legal minimum wage rate. (Compl., ¶¶ 45-50.)  Specifically, Plaintiff alleges "Defendants failed, at times, to accurately track and/or pay for all hours actually worked at their regular rate of pay that is above the minimum wage" by permittting employees to work off the clock through a series of policies, editing time entries to show less hours than actually worked, failing to pay split shift premiums, and failing to pay reporting time pay.  (Compl., ¶ 48.)

38.    Plaintiff's allegations that Defendants' policies and practices failed to pay minimum wage, this Court can assume one hour of unpaid minimum wages per non-exempt employee, during each workweek.  "[C]ourts in this district have found an assumption of one hour of unpaid minimum wages per employee per workweek .

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

-11-

PAYNE & FEARS LLP

ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

. . to be reasonable, even if a complaint uses limiting language, when a plaintiff alleges a policy or practice on the part of defendants." *Demaria v. Big Lots Stores – PNS, LLC*, No. 2:23-CV-00296-DJC-CKD, 2023 WL 6390151, at *6 (E.D. Cal. Sept. 29, 2023); *see, e.g., Tijerina v. United Airlines, Inc*., No. 24-CV-02466-BEN-SBC, 2025 WL 1355308, at *3-4 (S.D. Cal. May 9, 2025) (10% violation rate for overtime assumed reasonable based on policy and practice allegation in complaint); *Cabrera v. South Valley Almond Co., LLC*, No. 1:21-CV-00748-AWI-JLT, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021) (finding that the defendant's "assumptions of one hour of unpaid overtime per week and one hour of unpaid minimum wages per week are consistent with allegations that violations occurred 'at times' and 'on occasion'"); *Soto v. Greif Packaging, LLC*, No. SACV 17-2104 JVS (JDEx), 2018 WL 1224425, at *3 (C.D. Cal. Mar. 8, 2018) (finding it reasonable to assume one hour of unpaid wages per employee per workweek where plaintiff alleged that defendant failed to pay her and the class members for all hours worked on a "consistent and regular basis").

39.    As the Class Members are the same for this cause of action as they are for the first cause of action, the same amount of workweeks will be used: 853,445.

40.    As discussed above, the California minimum wage rate was $14.00 per hour in 2021.   That is the rate that Defendant uses in these calculations for the entire class period, despite the California minimum wage increasing each year since then.

41.    By multiplying the lowest hourly minimum wage rate applicable during the class period, by the minimum total number of weeks worked by the putative class during the class period, the total theoretical amount in controversy for Plaintiff's minimum wage claim is **$11,948,230**: ($14.00 x 853,445).

**3.    Plaintiff's Third and Fourth Claims For Failure to Permit Meal Periods and Rest Periods Places Almost $24 Million in**

**Controversy.**

42.     Plaintiff alleges that Defendants deprived Plaintiff and the alleged Class Members of their lawful meal and rest periods.  Specifically, Plaintiff alleges that they were "at times,  not provided complete, timely 30-minute, duty-free uninterrupted meal periods every five hours of work without waiving the right to take them, as permitted…" and "at times, not authorized or permitted to take complete, timely 10-minute, duty-free uninterrupted rest periods every four (4) hours of work or major fraction thereof."  (Compl., ¶¶ 55, 63.)  Plaintiff alleges an hour of premium pay was not provided each day a meal or rest period was missed.  (*Id.*)

43.     Under California law, employees who are denied the opportunity to take proper meal and rest periods are entitled to one hour of premium pay for each day that a meal period is missed, and one hour of premium pay for each day that a rest period is missed, i.e., two hours of premium pay for each day that both a meal and rest period are missed.  *See Tercero v. C&S Logistics of Sacramento/Tracy LLC*, No. 2:24-CV-00963-DC-JDP, at *5 (E.D. Cal. Nov. 19, 2024); *Marlo v. United Parcel Serv., Inc*., No. CV 03-04336 DDP (RZx), 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009).  As a matter of law, meal and rest period claims are properly considered in determining the amount in controversy.  *See, e.g., Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007); *Helm v. Alderwoods Grp., Inc*., No. C 08-01184 SI, 2008 WL 2002511, at *4 (N.D. Cal. May 7, 2008).

44.     Importantly, Plaintiff also alleges that the failure to provide uninterrupted meal and rest periods constitutes unfair competition within the meaning of Business and Professions Code section 17200.  (*See* Compl., ¶ 104).  The statute of limitations for such a claim is four years.  Cal. Bus. & Prof. Code § 17208.  Accordingly, the measure of potential damages for meal and rest break violation claims is based on a four-year limitations period.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

45.     Courts have held that up to a 60% violation rate is reasonable to assume when no specific amount of violations are alleged.  *See Sanchez v. Abbott Labs*., No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057, at \*4-5 (E.D. Cal. June 30, 2021) (holding that a 20% to 60% violation rate for meal period and rest period violations is reasonable when a plaintiff claims a "pattern and practice" of meal and rest period violations); *Serrieh v. Jill Acquisition LLC*, 707 F. Supp. 3d 968, 975 (E.D. Cal. 2023) (holding that a 24% violation rate is reasonable where meal and rest breaks were alleged to not be provided "at times").

46.     Here, Defendant applies the even more conservative rate of one alleged violation per week per claim.  *See Campbell v. Vitran Exp., Inc*., 471 F.App'x 646, 648-649 (9th Cir. 2012) (finding an assumption that "each claimant missed at least one rest break and one meal break per week" was adequately supported by the complaint where the complaint alleged that defendant "regularly and consistently failed to provide uninterrupted meal and rest periods"); *Tijernia, supra*, 2025 WL 1355308, at \*2 (assumed violation rate of one rest break per workweek and one missed meal period break every other workweek was reasonable); *Byrd v. Masonite Corp*., No. EDCV 16-00035 JGB (KKx), 2016 WL 2593912, at \*5 (C.D. Cal. May 5, 2016) (allegations of a systematic practice supports the "assumption that each putative class member missed one meal break and one rest period per workweek"); *Garza v. Brinderson Constructors, Inc*., 178 F. Supp. 3d 906, 911 (N.D. Cal. 2016) (assumption of one meal and one rest violation per week is reasonable where the complaint alleged that plaintiff "regularly" missed meal breaks).

47.     Defendant calculates the combined minimum amount in controversy for the Class Members as follows: $14 (lowest minimum wage rate during the class period) x 2 (one meal premium + one rest premium) x 853,445 (the minimum number of workweeks during the class period) = **$23,896,460**.

**4.     Plaintiff's Fifth Claim for Failure to Pay All Wages Due**

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

**Upon Termination Places over $65 Million in Controversy**

48.     Plaintiff alleges that Defendant faileds to pay her and the Class Members pursuant to the requirements of California Labor Code sections 201, 202, and 203.  (See Compl., ¶¶ 67-74.)  The statute of limitations for penalties under California Labor Code section 203 is three years.  Cal. Civ. Proc. Code § 338(a).

49.     Although, again, Defendant denies that any such statutory violations occurred, or that any such wages, penalties, or damages are owed to Plaintiff or putative class members, that fact is irrelevant for purposes of this jurisdictional analysis.  *See Lewis*, 627 F.3d at 399; *Heejin Lim v. Helio, LLC*, No. CV 11–9183 PSG (PLAx), 2012 WL 359304, at *2 (Feb. 2, 2012).

50.     If an employer fails to pay wages due an employee at the time of termination or within 72 hours after resignation, as required by California Labor Code sections 201-202, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced" for up to a maximum of 30 days.  Cal. Lab. Code § 203(a); see also *Quintana v. Claire's Stores, Inc*., No. 13-0368-PSG, 2013 WL 1736671, at *4-6 (N.D. Cal. Apr. 22, 2013) ("As to the waiting time claims, the court finds that Defendants' calculations" of thirty days of waiting time penalties for each putative class member terminated during the statute of limitations "are supported by Plaintiffs' allegations and are a reasonable estimate of the potential value of the claims.").  Thus, penalty amounts are calculated by multiplying the number of former employees in the putative class by thirty days' wages.  Thirty days' wages, in turn, can be calculated by multiplying the average number of hours worked by the average rate of pay.  *See Ritenour*, 228 F. Supp. 3d at 1028-29 (going through calculation); *Rippee v. Boston Mkt. Corp*., 408 F. Supp. 2d 982, 985-86 (S.D. Cal. 2005) (same).

51.     If, as Plaintiff alleges, Defendant "intentionally adopted policies or practices incompatible with the requirements of Labor Code sections 201 and 202 resulting in the failure, at times, to pay all wages earned prior to termination or

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

resignation" (Compl. ¶ 71), then a reasonable assumption is that the Complaint alleges a 100% violation rate for terminated employees. *See Salcido v. Evolution Fresh, Inc.*, No. 2:14-CV-09223-SVW-PLA, 2016 WL 79381, at *7 (C.D. Cal. Jan. 6, 2016) (full 30-day waiting time penalty applied for all terminated employees, when based on systematic policies adopted by the employer); *Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-CV-03810-WHO, 2016 WL 4579099, at *6 (N.D. Cal. Sept. 2, 2016) (same); *Tajonar v. Echosphere, L.L.C.*, No. 14CV2732-LAB (RBB), 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (same).

52.     From July 22, 2022 – October 31, 2024, approximately 12,976 non-exempt, hourly employees of Defendant separated their employment in California. (Robinson Decl., ¶ 6.) From November 1, 2024 – August 13, 2025, approximately 5,257 non-exempt, hourly employees of Defendant separated their employment in California.  (Scruggs Decl., ¶ 5.)  In total, 18,233 non-exempt, hourly employees of Defendant separated their employment in California.  Thus, for Plaintiff and the alleged Class Members, the amount in controversy, pursuant to the authority in *Ritenour*, 228 F. Supp. 3d at 1028-29; *Mackall*, 2016 WL 4579099, at *6; and *Tajonar*, 2015 WL 4064642, at *3, is **$65,638,800**, calculated as follows: ($15 [lowest minimum wage for the time period] x 8 [hours per day of work] x 30 [days of waiting time penalties] x 18,233.)

## 5.     Plaintiff's Sixth Claim for Failure to Provide Accurate Wage Statements Places over $43 Million in Controversy.

53.     Plaintiff alleges that she and the Class Members were provided inaccurate wage statements that did not reflect gross wages earned, total hours worked, net wages earned, applicable hourly rates in effect, the name and legal address of the employer, and the name of the entity securing the services of the farm labor contractor who employed Plaintiff and Class Members.  This failure was because Defendants adopted "policies and practices" that resulted in violations of Labor Code section 226.  (See Compl., ¶¶ 150 - 151.)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

54.    For employees who were allegedly not provided accurate wage statements each pay period, the amount in controversy for alleged penalties is calculated based on a 100% assumed violation rate per pay period. *Ritenour*, 228 F. Supp. 3d at 1030 (complaint that simply alleged that defendants "failed to provide Plaintiffs and the other class members with complete and accurate wage statements" made it reasonable for court to assume a 100% violation rate); *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK (JCx), 2015 WL 2452755, at *4-5 (C.D. Cal. May 21, 2015) (finding that allegations that defendant "adopted and maintained uniform policies, practices and procedures" that caused labor law violations sufficient to support 100% alleged violation rate for Labor Code section 226 claim).

55.    An employee suffering an injury as a result of a knowing and intentional failure to comply with Labor Code section 226(a) is entitled to "recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Cal. Lab. Code § 226(e)(1). The applicable statute of limitations period is one year. Cal. Civ. Proc. Code § 340(a).

56.    From July 22, 2024 – October 31, 2024, Defendant employed approximately 17,798 non-exempt hourly employees who were issued approximately 82,785 paychecks. (Robinson Decl., ¶ 5.) From November 1, 2024 – August 13, 2025, Defendant employed approximately 3,606 additional non-exempt hourly employees. (Scruggs Decl., ¶ 5.) From November 1, 2024 – August 13, 2025, ABM issued approximately 359,993 checks to hourly, non-exempt employees in California. (Scruggs Decl., ¶ 6.) In total, 442,778 paychecks were issued to hourly, non-exempt employees in California, and 21,404 non-exempt hourly employees were employed in California. Given that one paycheck is issued per pay period, there were 442,778 pay periods that occurred during the applicable one-year

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

statute of limitations period. This means there were 21,404 "initial" pay periods and 421,374 "subsequent" pay periods (i.e., 442,778 – 36,898).

57. Based on the above, we may calculate the amount in controversy for the Class Members as follows: (21,404 x $50 ("initial" pay period penalties)) + (421,374 x $100 ("subsequent" pay period penalties)) = **$43,207,600**.

58. Since courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met, if Plaintiff were to seek recovery of the aggregate penalty of $4,000 for each member of the class during the one-year statute of limitations, the total amount in controversy under California Labor Code section 226(e)—according to Plaintiff—could reach as high as $85,616,000: (21,404 x $4,000). *See Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205-06 (E.D. Cal. 2008).

### 6. <u>Plaintiff's Seventh Claim For Failure to Timely Pay Wages During Employment Places Over $250 Million in Controversy.</u>

59. Plaintiff alleges that "Defendants employed policies and practices that resulted in, at times, not paying Plaintiff and Class Members in accordance with Labor Code Section 204." (See Compl., ¶ 87.)

60. Just as with waiting time penalties, a single violation in each pay period triggers the penalties, and as Plaintiff has alleged policies and practices that resulted in violations, a 100% violation rate is reasonable to assume. *Martinez v. Cencora, Inc.*, No. 5:24-cv-02663-MRA-SHK, 2025 LX 87436, at *12 (C.D. Cal. May 20, 2025) (finding that since a single violation is enough to trigger the penalties, a 100% violation rate is plausible under Cal. Lab. Code § 204); *Leander v. Accent Controls, Inc.*, No. 24-cv-01821-GPC-SBC, 2025 LX 134945, at *20 (S.D. Cal. Jan. 24, 2025) (where the court determined that Defendant failed to pay Plaintiff meal and rest break premiums each period, a violation rate of 100% was safe to assume under Cal. Lab. Code § 204); *McCollum v. TGI Friday's, Inc.*, 2022 WL 2663870, at *7 (C.D.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

Cal. July 11, 2022) (same). Based upon Plaintiff's allegations, the Court can safely assume that there was at least one Labor Code violation which resulted in failure to pay all wages owed to Plaintiff each pay period.

61. Under Labor Code Section 210, Plaintiff and Class Members would be entitled to recover $100 per each initial violation per class member, plus $200 for each subsequent willful or intentional violation violation plus 25% of the amount unlawfully withheld" Cal. Lab. Code § 210(a).

62. Importantly, Plaintiff also alleges that the failure to timely pay wages constitutes unfair competition within the meaning of Business and Professions Code section 17200. (*See* Compl., ¶ 104.) The statute of limitations for such a claim is four years. Cal. Bus. & Prof. Code § 17208. While Defendant disputes Plaintiff's recitation of law,[1] for the purposes of this analysis *only*, their allegations must apply. Accordingly, the measure of potential damages for meal and rest break violation claims is based on a four-year limitations period.

63. From July 22, 2021 – October 31, 2024, Defendant employed approximately 31,238 hourly, non-exempt employees in California. (Robinson Decl., ¶ 4.) During that time period, approximately 911,580 paychecks were issued to those employees. (Robinson Decl., ¶ 4.) From November 1, 2024 – August 13, 2025, Defendant hired an additional 3,606 employees. (Scruggs Decl., ¶ 4.) During that time period, approximately 359,993 paychecks were issued to hourly, non-exempt employees in California. (Scruggs Decl., ¶ 6.) In total, 1,271,573 paychecks were issued to hourly, non-exempt employees in California, and 34,844 non-exempt hourly employees were employed in California. Given that one paycheck is issued per pay period, there were 1,271,573 pay periods that occurred during the applicable four-year statute of limitations period. This means there were 34,844 "initial" pay periods and 1,236,729 "subsequent" pay periods (i.e., 1,271,573 – 34,844).

---

[1] See, *Hansber v. Ulta Beauty Cosmetics, LLC*, No. 1:21-cv-00022-AWI-JLT, (E.D. Cal. Oct. 5, 2021)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

64.    Based on the above, we may calculate the amount in controversy for the Class Members as follows: (34,844 x $100 ("initial" pay period penalties)) + (1,236,729 x $200 ("subsequent" pay period penalties)) = **$250,830,200**. This number does not even include the additional 25% of the amount allegedly unlawfully withheld.

### 7.    Plaintiffs' Eighth Claim Under Cal. Lab. Code Sections 2802 for Failure to Indemnify Places Over $7 Million in Controversy.

65.    An employer is required to indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties under California Labor Code 2802.  Plaintiff alleges that at times, Defendant failed to pay them and Class Members reimbursements based on Defendant's requirements for employees to launder mandatory work uniforms, use cellular phones for work-related purposes, and purchase tools necessary to perform work duties. (*See* Compl., ¶¶ 90-96.)  While Defendant strongly denies that business expenses are owed to Plaintiff or putative class members, that fact is irrelevant for purposes of this jurisdictional analysis. *See Lewis*, 627 F.3d at 399; *Heejin Lim*, 2012 WL 359304, at *2.

66.    If, as Plaintiffs allege, they and Class Members were required to launder their mandatory work uniforms, use their personal cellphones for work-related purposes, and purchase tools necessary to perform work duties, then a reasonable assumption is that the Complaint alleges a 100% violation rate for all employees. *See Vallejo v. Sterigenics U.S., LLC*, No. 3:20-cv-01788-AJB-AHG, 2021 WL 2685348, at *6 (S.D. Cal. June 29, 2021) (where the plaintiff alleged that personal cellphones were required for work but not reimbursed, $300 for each work year was a reasonable calculation); *Garcia v. William Scotsman, Inc.*, No. CV 24-02977, 2024 WL 4289895, at *6 (C.D. Cal., Sept. 25, 2024) (where plaintiff plead that there was a "systematic, company-wide policy and practice of … [f]ailing to

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

indemnify employees for necessary business expenses incurred," the court granted a 5$ a month violation rate.)

67.    Importantly, Plaintiffs also allege that the failure to provide reimbursements for business expenses constitutes unfair competition within the meaning of Business and Professions Code section 17200. (*See* Compl., ¶ 104.) The statute of limitations for such a claim is four years. Cal. Bus. & Prof. Code § 17208. Accordingly, the measure of potential damages for expense reimbursement violation claims is based on a four-year limitations period.

68.    As Plaintiffs allege a 100% violation rate of failing to reimburse business expenses in the Complaint, the amount in controversy for the Seventh Claim, pursuant to the authority in *Vallejo*, No. 3:20-cv-01788-AJB-AHG, 2021 WL 2685348, at *6, is **$7,335,998** as follows: ($300 [approved reimbursement amount per work year] x 24,453 work years [1,271,573 employee workweeks/52 weeks]).

### 8.    Summary of Amount in Controversy

69.    In light of the foregoing, Plaintiff's allegations in just her First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action, establish an amount in controversy well in excess of the jurisdictional minimum of $5 million for purposes of removal under CAFA.  The requested recovery contemplated by Plaintiff's remaining causes of action, as well as attorney fees, will only increase the total amount in controversy.  The absolute minimum amount in controversy is summarized as follows:

| Damages | Amount |
|---|---|
| Failure to Pay Overtime Wages | $17,922,345 |
| Failure to Pay Minimum Wages | $11,948,230 |
| Failure to Provide Meal and Rest Breaks | $23,896,460 |
| Failure to Pay Wages Due Upon | $65,638,800 |

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP

ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

| Termination | |
|---|---|
| Failure to Provide Accurate Wage Statements | $43,207,600 |
| Failure to Pay Wages Timely During Employment | $250,830,200 |
| Failure to Indemnify | $7,335,998 |
| **Total** | **$420,779,633** |

This total amount does not even include Plaintiff's 9th Cause of Action alleging violations of Labor Code § 227.3, Plaintiff's tenth cause of action alleging violations of Labor Code § 245, or Plaintiff's statutory attorneys' fees, which will materially increase the total amount in controversy. Courts typically use 25% of the recovery as the benchmark for attorneys' fees in these types of class cases. *See Staton v. Boeing Co*., 327 F.3d 938, 968 (9th Cir. 2003); *Tijerina, supra*, 2025 WL 1355308, at *4.

## IV.    NO EXCEPTION APPLIES TO DEFEAT CAFA REMOVAL

70.    Because Defendant has shown that federal jurisdiction exists over this action, Plaintiff bears the burden of proof to show that an exception to CAFA removal applies, if any, and justifies remand.  Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1024 (9th Cir. 2007).  Plaintiff cannot meet this burden, as neither the "Home State" nor the "Local Controversy" exceptions apply to this action.

### A.    The "Home State" Exception Does Not Apply.

71.    The "Home State" exception does not apply because both primary Defendants are not citizens of California.  Under the "Home State" exception, a case may be remanded where "*all* primary defendants" are citizens of California.  *Singh v. Am. Honda Fin. Corp*., 925 F.3d 1053, 1068 (9th Cir. 2019) (emphasis added); *see also Corsino v. Perkins*, No. CV 09-09031 MMM (CWx), 2010 WL 317418, at *5 (C.D. Cal. Jan. 19, 2010) (emphasis added) ("Many courts 'agree that the term "the primary defendants" means that all primary defendants must be citizens of the

-22-

state concerned.'" (Citations omitted.)).  Stated conversely, where any one primary defendant is a citizen of a state other than California, the "home state" exception will not apply to justify remand.  *Kearns v. Ford Motor Co.*, No. CV 05-5644 GAF (JTLx), 2005 WL 3967998, at *8 (C.D. Cal. Nov. 21, 2005).

72.    A primary defendant is one who: (1) has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the claims asserted by plaintiff; or (5) is the only defendant named in one particular cause of action.  *Marino v. Countrywide Fin. Corp.*, 26 F. Supp. 3d 949, 953 (C.D. Cal. 2014) (citations omitted); *see also Singh*, 925 F.3d at 1067-68 (determination of whether a defendant is a "primary defendant" depends on whether, "given the claims asserted against the defendant, it has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable" (internal quotation marks omitted)).  Plaintiff has the burden of showing the "home state" exception applies to justify remand.  *Serrano*, 478 F.3d at 1024.

73.    Plaintiff cannot meet this burden because Defendant ABM Industry Groups, LLC, is a citizen of the States of Delaware and New York, not California, as described above.  *See Singh*, 925 F.3d at 1067-68.  While the remaining Defendants Fortinet Inc. and Adriana Solorio may be California citizens, Plaintiff's complaint, at best, paints a picture of equal joint liability between all Defendants.  (Compl. ¶¶ 7-12.)  Additionally, Plaintiff alleges that Defendant Fortinet, Inc., was a client employer under Labor Code § 2810.3, and Defendant ABM Industry Groups, LLC, was a labor contractor under Labor Code § 2810.3.  (Compl. ¶¶ 3-4.)

### B.    The "Local Controversy" Exception Does Not Apply.

74.    The "Local Controversy" exception does not apply because similar class actions have been filed in the last three years.  The "Local Controversy" exception applies to justify remand only when, "during the 3-year period preceding

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

-23-
PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332 AND 1441

the filing of [the current] action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii). Plaintiff cannot meet her burden here to satisfy the exception because multiple similar class actions have been filed and/or pending in the past three years. *Serrano*, 478 F.3d at 1024.

75.    Within the three years prior to Plaintiff's filing of her Complaint, there have been multiple prior class actions filed against Defendant. First, *Virginia Arredondo-Macias v. SBM Site Servs., LLC, et al.*, Case No. 23STCV05624, was originally filed in Los Angeles Superior Court on March 14, 2023, against Defendant and other entities. (*See* RJN, Ex. B, attached hereto as **Exhibit "H"** as part of the Index of Exhibits). Second, *Curtis Williams v. ABM Industry Groups, LLC, et al.*, Case No. 24CV023944, was originally filed in Sacramento Superior Court on November 22, 2024, against Defendant and other entities. (*See* RJN, Ex. A, attached hereto as **Exhibit "G"** as part of the Index of Exhibits). Fourth, *Maria E. Rodriguez v. ABM Industry Groups, LLC*, Case No. 25STCV11930, was originally filed in Los Angeles Superior Court on April 23, 2025, against Defendant. (*See* RJN, Ex. D, attached hereto as **Exhibit "I"** as part of the Index of Exhibits).[2] These three class actions assert wage and hour claims that are similar, if not identical, to the claims asserted by Plaintiff, on behalf of the same persons (i.e., hourly employees of ABM Industry Groups, LLC).

76.    Because at least one other class action has been filed against Defendant in the present action within the last three years, alleging similar factual allegations and legal claims against Defendant on behalf of the same or similar persons, the "Local Controversy" exception cannot apply. *Corsino*, 2010 WL 317418, at *4;

---

[2] Subsequent to the instant action, *Maria Reina Bonilla v. ABM Industry Groups, LLC, et al,* Case No. 25STCV22684, was filed in Los Angeles Superior Court on July 31, 2025, against Defendant and other entities. (*See* RJN, Ex. E, attached hereto as **Exhibit "J"** as part of the Index of Exhibits)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

*Jadeja v. Redflex Traffic Sys., Inc.*, 2010 WL 4916413, at *3 (N.D. Cal. Nov. 22, 2010).

## V.    THE PROCEDURAL REQUIREMENTS OF 28 U.S.C. SECTION 1446 ARE SATISFIED

77.    In accordance with 28 U.S.C. section 1446(a), this Notice of Removal is filed in the District in which the action is pending.  The Santa Clara Superior court is located within the  Division of the Northern District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

78.    In accordance with 28 U.S.C. section 1446(a), copies of all process, pleadings, and orders served upon Defendant is attached as Exhibits to this Notice and Petition.

79.    In accordance with 28 U.S.C. section 1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Santa Clara.  Notice of Compliance shall be filed promptly afterwards with this Court.

80.    As required by Federal Rule of Civil Procedure, Rule 7.1, Defendant concurrently filed its Notice of Interested Parties, along with its Civil Case Cover Sheet.

## VI.    CONCLUSION

81.    Defendant hereby respectfully removes this action from the Superior Court of California in and for the County of Santa Clara to this United States District Court.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

1    DATED: August 26, 2025          PAYNE & FEARS LLP
2                                    Attorneys at Law
3
4                                    By:     /s/ Laura Fleming
5                                            LAURA FLEMING
6                                          MATTHEW C. LEWIS
7                                         JACK M. McMENAMIN
8                                    Attorneys for Defendant ABM Industry
                                     Groups, LLC
9

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332 AND 1441

# INDEX OF EXHIBITS

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| "A" | Original Complaint filed in the State Court Action by Plaintiff on July 22, 2025. |
| "B" | Summons filed in the State Court Action by Plaintiff on July 22, 2025. |
| "C" | Civil Case Cover Sheet filed in the State Court Action by Plaintiff on July 22, 2025. |
| "D" | Alternative Dispute Resolution Packet filed in the State Court Action. |
| "E" | Order Deeming Case Complex and Staying Discovery and Responsive Pleading Deadline issued by the Santa Clara County Superior Court on July 31, 2025. |

4937-2748-3482.3

PAYNE & FEARS LLP

ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332 AND 1441